IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY STEINBERG, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-489 |
| | : | |
| CAPGEMINI AMERICA, INC. | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                                   **August 15, 2022**

Plaintiff Ashley Steinberg brings this action against Defendant Capgemini America, Inc., alleging sexual harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act (PHRA), and the Philadelphia Fair Practices Ordinance (PFPO). Capgemini now moves to dismiss Steinberg's claims and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court will grant Capgemini's motion, dismiss Steinberg's complaint, and compel arbitration because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA) does not apply to Steinberg's case, and Steinberg is thus bound by an existing arbitration agreement.

**FACTUAL BACKGROUND**

Steinberg began working for LiquidHub, Inc.— a subsidiary of Capgemini—on May 21, 2018. *See* Compl., ¶ 17. On November 30, 2018, she was informed she would be transferring to Capgemini by January 1, 2019. *See* Declaration of Britta Haring, ECF No. 3-2, ¶¶ 4-5. As a condition of this transfer, Steinberg had to sign Capgemini's Employment Agreement, which stated she would be waiving "any right [she] may have to any dispute, controversy or claim arising out

---

[1] In the Third Circuit, courts traditionally "treat[] a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Palcko v. Airborne Exp. Inc.*, 372 F.3d 588, 597 (3d Cir. 2004).

1

of relating to or concerning the provisions of this Agreement determined by a court of law and that all such disputes shall be resolved through arbitration" which included "employment related disputes." Def.'s Exh. A, ECF No. 3-2, at p. 8. The Arbitration Agreement also stated she could only bring those issues to "individualized, binding arbitration." Def.'s Exh. A at p. 7. Steinberg signed the Employment Agreement, and began working at Capgemini on January 1, 2019. *See* Haring Decl. ¶¶ 4-5.

Steinberg identified numerous incidents of sexual harassment against Executive Director Monsanto in 2019. Steinberg asserts Monsanto commented on her physical appearance, stating she needed to be more like his work wife, and sent her in-love emojis. Compl., ¶¶ 27a-e. Steinberg also alleges Monstanto told her "if [her] husband had heard them talking on the phone, he would have thought they were going off to have a rendezvous." *Id.* When Steinberg reported these incidents to Capgemini's "Speak-Up" Department, nothing was done. Compl., ¶ 48. After reporting the incidents, Steinberg felt she was being ostracized and deprived of the opportunities for career advancement she had previously been nominated for. Compl., ¶¶ 31-43. Steinberg was eventually fired from Capgemini on July 31, 2020.

Steinberg was told she was fired for financial reasons and because she had not found a "billable" position internally. Compl., ¶¶ 49-50. In response, Steinberg reminded Capgemini that she had not found a "billable" position because she had spent June and July working on internal, non-billable projects that were critical to Capgemini's sales opportunities. Compl., ¶ 51.

Steinberg alleges she was retaliated against and fired by Capgemini because she reported Monsanto's sexual harassment.

**DISCUSSION**

Since 1925, the Federal Arbitration Act (FAA) has provided that a written "contract evidencing a transaction involving commerce to settle by arbitration. . . shall be valid, irrevocable, and enforceable." 9 U.S.C. §2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995). And the FAA requires courts to liberally construe the scope of arbitration agreements. *See Perry v. Thomas*, 482 U.S. 483, 489 (1987) (stating the FAA was essentially a "congressional declaration of a liberal federal policy favoring arbitration agreements."); *Townsend v. Pinnacle Entertainment, Inc.*, 457 F. App'x 205, 207 (3d Cir. 2012).

By passing the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), Congress has begun to chip away at the breadth of the FAA. This significant act rightfully pulls back on the long-held presumption towards arbitration where sexual harassment is concerned. The EFAA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute … no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal [or] State law and relates to the … sexual harassment dispute." EFAA, Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402(a)). In doing so, the EFAA unequivocally ends the era of employers being able to unilaterally compel arbitration in sexual harassment cases. Unfortunately, the EFAA only applies to any "dispute or claim that arises or accrues on or after the date of the enactment of this Act," and the EFAA was enacted on March 3, 2022. EFAA, Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402).

The crux of the dispute is whether the EFAA applies to this case. If it does, then Steinberg's arbitration agreement is unenforceable regarding sexual harassment disputes. In opposition, Steinberg argues: (1) the EFAA applies because the dispute as to arbitrability arose after March 3, 2022 and (2) the Arbitration Agreement is unconscionable. The Court will address each in turn.

Regrettably, I must conclude the EFAA does not apply. In support of her argument, Steinberg attempted to differentiate between "claim" and "dispute," and alleges a "dispute" as to the arbitrability of the sexual harassment claims did not arise or accrue when the internal harassment *occurred* nor when the above-captioned case was *filed* in federal court. Instead, Steinberg argues the dispute arose when Capgemini *filed its Motion* raising the arbitration clause as an affirmative defense on April 4, 2022. Pls. 'Opposition to Def.'s Mot. Dismiss at 7-8. Such a reading is impermissibly broad.

A plain reading of the EFAA makes clear the term "claim or dispute" refers to a claim or dispute of sexual harassment—not a dispute regarding *arbitrability*. As a result, the relevant date of the "claim or dispute" is, at the latest, when the case itself was filed[2] not when a specific Motion disputing arbitrability was filed. When discussing which arbitration agreements are invalid, the law also states "no pre-dispute arbitration agreement or pre-dispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law *and relates to the sexual assault dispute or the sexual harassment dispute*." Congress never referenced a "dispute as to the arbitrability" in discussing accrual in 9 U.S.C. § 401, although they certainly could have done so. Instead, Congress specifically defined "sexual harassment dispute" as a dispute "relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401(3) & (4). The dispute in question must pertain to sexual assault or harassment—the statute is not referencing a dispute regarding arbitrability.

Steinberg claims the sexual harassment began "in or about September 2019" and continued until Steinberg was fired on July 31, 2020. (Compl. ¶ 25, 49-50). On August 24, 2020, Steinberg

---

[2] The Court need not determine if the actual trigger date for a "claim or dispute" "arising and accruing" is the date of: (1) filing of the case or (2) the act of harassment itself. The result here is the same even with the later, and thus more generous, interpretation.

4

filed her Charge of Discrimination with the PHRC, and the complaint to this Court was filed on February 7, 2022. Mot. Dismiss at 8. *All* of these dates are before March 3, 2022, when the EFAA was enacted. Accordingly, the EFAA cannot be applied to Steinberg's case.

Steinberg also alleges the Arbitration Clause she signed was unconscionable. In the Third Circuit, unconscionability is considered a "contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). This requires a party to show the arbitration agreement is both substantively and procedurally unconscionable. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). Enforceability, and consequently unconscionability, however, can be delegated to an arbitrator as part of an arbitration agreement.

In cases where there is a delegation provision, the "*Rent-A-Center* Court explained that the FAA operates on the delegation provision as it does on any other arbitration agreement. 561 U.S. at 70, 130 S.Ct. 2772. Thus, consistent with the severability doctrine, unless the party opposing arbitration challenges "the delegation provision specifically," the district court "must treat it as valid" and "must enforce it" by sending "any challenge to the validity" of the underlying *arbitration agreement* to the arbitrator." *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Fund*, 974 F.3d 386, 399 (3d Cir. 2020). This is true "[e]ven when the grounds for invalidating the delegation provision and the underlying agreement are the same, the arbitrability challenge must sill be directed at the delegation provision specifically to invoke a court's power to intervene." *Id.* (citing *Rent-A-Ctr., W. Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).

Here, there is a delegation clause which reads: "[a]ny issue concerning the extent to which any Dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these Procedures, *including any contention that all or part of these Procedures are invalid or*

*unenforceable*, shall be governed by the Federal Arbitration Act and resolved by the arbitrators." Def.'s Exh. A, ECF No. 3-2, at p. 11 (emphasis added). Steinberg never mentions this delegation clause in her opposition. Instead, she solely alleges (1) the agreement is procedurally unconscionable because it is a contract of adhesion presented with a "job or no job scenario" and (2) the agreement is substantively unconscionable because "the EFAA represents [the] long-awaited admission by Congress that the policy favoring arbitration had gone too far." Pl.'s Opposition, ECF No. 8, at 9-12. Because Steinberg failed to challenge the delegation provision specifically, the Court must treat it as valid and enforce it. The unconscionability objections should be resolved by the arbitrators.

**CONCLUSION**

Steinberg has failed to prove the EFAA's applicability, and the delegation clause in the arbitration agreement applies to Steinberg's overall claims of unconscionability. As a result, the Motion to Compel Arbitration is GRANTED insofar as the case shall proceed to arbitration in accordance with the Arbitration Agreement. In keeping with 9 U.S.C § 3, and Steinberg's request for a stay during arbitration, the case will be stayed during the pendency of arbitration. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). The parties shall notify the Court upon completion of the arbitration proceedings.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
 Juan R. Sánchez, C.J.